IN THE UNITED STATES COURT OF FEDERAL CLAIMS

```
_____
                                        )
CINDY ALVAREZ, et al.,                  )
                                        )
              Plaintiffs,               )      No. 20-1533C
                                        )
       v.                               )      Filed: December 30, 2021
                                        )
THE UNITED STATES,                      )
                                        )
              Defendant.                )
_____ )
```

## MEMORANDUM OPINION AND ORDER

Plaintiffs, 55 current and former employees at the Federal Correctional Institution ("FCI") Mendota in Mendota, California, filed a Complaint seeking "declaratory judgment, backpay, and other relief" for allegedly uncompensated work they performed for the U.S. Department of Justice, Bureau of Prisons. Pls.' Compl. ¶ 1, ECF No. 1. Before the Court is the Government's Motion to Dismiss Plaintiffs' action under Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC") for failure to state a claim upon which relief can be granted. Also before the Court is Plaintiffs' Motion for Leave to File Notice of Supplemental Authority.

For the reasons discussed below, Plaintiffs' Complaint alleges facts sufficient to survive the Government's Motion, but the Court lacks jurisdiction to entertain any claims or requests for relief under the Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201–2202, and 28 U.S.C. § 1331. Consequently, the Government's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. The Court has considered Plaintiffs' Notice of Supplemental Authority, attaching recent decisions in analogous suits pending in this court, and thus **GRANTS** Plaintiffs' uncontested motion for leave to file the same.

## I. BACKGROUND

A.  **Statutory and Regulatory Background**

Under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, as amended by the Portal-to-Portal Act of 1947, 29 U.S.C. § 251 *et seq.*, qualifying employers are required to compensate at one and one-half times the employees' regular rate all non-exempt employees who worked in excess of 40 hours per week. 29 U.S.C. § 207; *see* 5 C.F.R. § 551.501. Employers who fail to comply with this provision of the FLSA are liable to their effected employees and may be sued to recover the unpaid overtime wages. 29 U.S.C. § 216.

"Activities performed either before or after the regular work shift . . . are compensable under the portal-to-portal provisions of the [FLSA] if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded . . . ." *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956). The Supreme Court has held that "any activity that is integral and indispensable to a principal activity is itself a principal activity" under the FLSA. *IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005) (internal quotation marks omitted). However, activities that are merely "preliminary to or postliminary to said principal activity or activities" are not compensable. 29 U.S.C. § 254(a)(2).

Work that is de minimis also is not compensable. *See Bobo v. United States*, 136 F.3d 1465, 1468 (Fed. Cir. 1998) ("When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded.") (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946))). Regulations promulgated by the Office of Personnel Management provide that an employee's preparatory or concluding activities that exceed 10 minutes per workday are not de minimis so long as they are "closely

related to an employee's principal activities" and are "indispensable to the performance of the principal activities." 5 C.F.R. § 551.412(a)(1).

### B.  Factual Background

FCI Mendota is a medium security prison housing over 900 inmates. ECF No. 1 ¶ 8. The prison is staffed 24 hours per day, 365 days per year by correctional officers, including Plaintiffs. *Id*. ¶ 9. As correctional officers, Plaintiffs allege that their "primary job duty is to maintain the safety and security" of the prison. *Id*. Plaintiffs execute this duty at assigned posts throughout FCI Mendota, most of which are staffed for 16 or 24 hours per day in eight-hour shifts. *Id*. ¶¶ 10–12. Plaintiffs allege that there is no scheduled overlap between the shifts at 16-hour and 18-hour posts. *Id*. ¶¶ 17–18. Because they are required to be at their assigned post with all necessary equipment and information by the start of their scheduled shift, Plaintiffs allege that fulfilling their primary duties causes them to work beyond their shift times. *Id*.

Specifically, Plaintiffs assigned to the 16-hour and 24-hour posts allegedly work an additional 15–30 minutes per shift performing uncompensated pre- and post-shift activities. *Id*. ¶¶ 13–14. Plaintiffs contend that their work day begins by clearing a COVID-19 health screening and then a staff security screening for the purpose of assuring no contraband enters the prison. *Id*. ¶¶ 20–21. After the security screening, Plaintiffs "collect and don their duty belts, protective vests, and other required equipment." *Id*. ¶ 20. Additionally, Plaintiffs assigned to a 16-hour post are required to collect further equipment and paperwork from the Control Center. *Id*. ¶ 22. Finally, Plaintiffs are admitted through a sally port, flip an "accountability chit" signifying they are on duty, pass through a slider gate, and walk to their assigned posts. *Id*. ¶¶ 23–24.

While walking to their posts, Plaintiffs allegedly check in with a supervisor at the Lieutenants' office and discuss information from the previous tour. *Id*. ¶ 24. As Plaintiffs continue

to their posts, they observe and correct inmate behavior, respond to inmate questions, check for security breaches and contraband, and respond to any emergencies that arise. *Id*. Plaintiffs aver that failure to respond to emergencies will result in disciplinary action and possible termination. *Id*. ¶ 29. Once at their posts, Plaintiffs inspect, account for, and exchange equipment as well as information with the outgoing officer. *Id*. ¶ 26. In addition, since the pandemic started, Plaintiffs assigned to quarantine housing units also put on personal protective equipment before entering the housing unit and performing the exchange. *Id*. After their shifts, Plaintiffs again exchange information and equipment with the oncoming officer, check for security breaches and contraband on their way back to the Control Center, and then return their equipment. *Id*. ¶ 28. Because of the pandemic, outgoing officers must sanitize their equipment before returning it to the Control Center. *Id*. ¶ 28. Plaintiffs claim that they have been wrongfully uncompensated for the time they spend performing these activities. *Id*. ¶ 36.

### C.  Procedural Background

On November 5, 2020, Plaintiffs commenced this action. Plaintiffs claim that, under the FLSA, they should be paid overtime compensation for the pre- and post-shift activities they performed outside their regular eight-hour work schedule and/or 40-hour work week for a period beginning November 5, 2017. *Id*. ¶ 35. Plaintiffs seek declaratory judgment, an accounting of the compensation to which they are entitled, monetary damages for unpaid compensation, along with attorneys' fees and any other just relief. *Id*. at 14 (Prayer for Relief).

On March 5, 2021, the Government moved to dismiss Plaintiffs' claims pursuant to RCFC 12(b)(6). Def.'s Mot. to Dismiss at 7, ECF No. 8. In its Motion, the Government argues that Plaintiffs have failed to allege facts sufficient to state a claim upon which relief may be granted. *Id*. at 10, 31. Specifically, the Government argues that the pre- and post-shift activities that

Plaintiffs seek compensation for are not principal activities and, therefore, do not require compensation. *Id.* at 13. It also argues that the Complaint lacks factual allegations regarding the amount of time it takes to perform each pre- and post-shift activity and, thus, fails to demonstrate that Plaintiffs' claims meet the FLSA's de minimis threshold. *See, e.g.*, *id.* at 15, n.1.

In response, Plaintiffs maintain that they have alleged facts sufficient to state a plausible claim for relief. Plaintiffs contend that the Government's argument to the contrary is premised on the erroneous application of case law and a mischaracterization of the nature of Plaintiffs' duties. Pls.' Resp. to Def.'s Mot. to Dismiss at 22, 27, ECF No. 9.

## II. STANDARD OF REVIEW

The Government moves to dismiss Plaintiffs' action under RCFC 12(b)(6) for failure to state a claim.[1] A motion to dismiss for failure to state a claim upon which relief may be granted "is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). It is well established that a Plaintiffs' Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009). A "plausible" complaint "does not need detailed factual allegations" but only enough detail "to raise a right of relief" beyond mere speculation. *Twombly*, 550 U.S. at 555. To

---

[1] Although the Government did not move to dismiss under RCFC 12(b)(1), it correctly argues that Plaintiffs' request for declaratory judgment under the DJA must fail as this Court does not have jurisdiction to grant relief under that statute. *See* ECF No. 8 at 32; *United States v. King*, 395 U.S. 1, 5 (1969). The Court likewise lacks jurisdiction under 28 U.S.C. § 1331, which defines federal question jurisdiction of the United States district courts. Accordingly, the Court dismisses any such claims or requests for relief pursuant to RCFC 12(h)(3) for lack of jurisdiction. The Government does not contest that the Court maintains jurisdiction over the remainder of Plaintiffs' suit.

5

state a claim for relief under the FLSA, plaintiffs must allege facts that support their allegation that "they have worked in excess of their applicable workweek under the statute, and that they have not been compensated at least one and one-half times their regular rate for those hours." *Fed. Air Marshals v. United States*, 84 Fed. Cl. 585, 592 (2008); *see Whalen v. United States*, 80 Fed. Cl. 685, 688 (2008) (denying the Government's motion to dismiss because "[p]laintiffs' allegations fit comfortably within this template" set by the FLSA).

When reviewing a Rule 12(b)(6) motion, "all well-pled factual allegations" should be assumed by the Court as true and "all reasonable inferences [should be made] in favor of the nonmovant." *United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1327–28 (Fed. Cir. 2006). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to prevent dismissal. *Iqbal*, 556 U.S. at 678.

### III. DISCUSSION

Assuming the truth of all well-pled allegations and accepting all reasonable inferences in their favor, Plaintiffs have pled sufficient facts plausibly suggesting that the contested pre- and post-shift activities alleged in the Complaint are integral to their principal duties as correctional officers and are not de minimis. Consequently, Plaintiffs have met their burden to survive the Government's Motion to Dismiss.

**A.     The Complaint Plausibly Alleges That Plaintiffs Have Performed Compensable Work That May Entitle Them to Relief under the FLSA.**

Plaintiffs claim they are entitled to compensation for certain pre- and post-shift activities under the FLSA, the first of which is undergoing the security screening upon arrival at FCI Mendota.[2] ECF No. 1 ¶¶ 20–21. Plaintiffs argue that their passing through this screening is a

---

[2] Although Plaintiffs' Complaint contended that new protocols relating to COVID-19 required additional health screenings before Plaintiffs begin their workday, Plaintiffs failed to respond to the Government's argument that any time spent undergoing such health screenings is

component of their primary duty of maintaining the safety and security of the prison. *Id*. The Government contends that the broad goal of "maintaining safety and security" does not constitute a "principal activity" for purposes of the Court's analysis under the FLSA. ECF No. 8 at 18. It further argues that security screenings are merely part of the preliminary process of entering FCI Mendota and are neither exclusive to Plaintiffs nor integral and indispensable to the performance of their principal activities. *Id.* at 19. The Government's argument relies primarily on *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27 (2014), and *Whalen v. United States*, 93 Fed. Cl. 579 (2010). *Id.* at 14–20.

As an initial matter, the Court is not persuaded that "maintaining safety and security" cannot be a principal activity as a matter of law. The Government correctly states the holding in *Integrity Staffing* that, in an FLSA action, the Court must determine the plaintiff-employees' principal activities "based on the employees' actual activities." *Id.* at 18; *see Integrity Staffing*, 574 U.S. at 36 ("The integral and indispensable test is tied to the productive work that the employee is *employed to perform*.") (emphasis in original)). But its assertion that only allegations of specific, discrete activities satisfy the pleading standard is a far-too-broad conclusion to draw therefrom.

---

not compensable under the FLSA. *See* Def.'s Reply in Support of Its Mot. to Dismiss at 15 n.9, ECF No. 10. As such, Plaintiffs have conceded that aspect of their claim. *See Cardiosom, LLC v. United States*, 91 Fed. Cl. 659, 664 (2010), *rev'd on other grounds*, 656 F.3d 1322 (2011). Even if not conceded, this court has found in another FLSA case that similar allegations fail to state a claim for relief. *See Adegbite v. United States*, No. 21-1183 C, 2021 WL 5045268, at *8 (Fed. Cl. Oct. 29, 2021). The Court finds *Adegbite*'s analysis persuasive. Plaintiffs' alleged primary duties do not include preventing the spread of COVID-19 or responsibility for inmate health in general. *See* ECF No. 1 ¶ 23. Therefore, such health screenings are not integral to Plaintiffs' alleged principal activity of maintaining safety and security at FCI Mendota, and, consequently, are non-compensable. *Adegbite*, 2021 WL 5045268, at *8.

Indeed, another judge of this court recently rejected the same argument. In *Alexander v. United States*, No. 21-1143C, 2021 WL 5045270, at *8 (Fed. Cl. Oct. 30, 2021), the Government argued that the plaintiff-prison guards' "generalized goal" of maintaining safety and security at the prison was not "specific or descriptive enough as plaintiffs' principal activities to defeat a motion to dismiss." The court disagreed, finding that "[t]he principal duties of prison guards at a penal institution are directed exactly towards maintaining safety and security of the facility, staff, and inmates in the [prison institution], without which all parts of the [prison institution] could not function." *Id*.

Here, the facts alleged by Plaintiffs are much the same as those pled in *Alexander*. Plaintiffs contend that their principal activity is "to maintain the safety and security of the Institution, Inmates and Staff." *Compare* ECF No. 1 ¶ 9, *with Alexander*, 2021 WL 5045270, at *8 ("plaintiffs characterize their principal activities as 'maintaining safety and security of staff, inmates, and the Institution.'"). Like the court in *Alexander*, this Court finds that such allegation, accepted as true, is sufficient to state a valid claim for relief when viewed in connection with Plaintiffs' other factual allegations regarding compensable work. *See, e.g.*, ECF No. 1 ¶ 9 (alleging that Plaintiffs perform their primary duty by "maintain[ing] constant vigilance" and "addressing any issues that they see").

Turning to the individual allegations regarding compensable activities, the Government argues that *Integrity Staffing* and *Whalen* require the Court to conclude that security screenings are non-compensable. ECF No. 8 at 18. The Court finds both cases to be factually and procedurally distinguishable from the case at hand. In *Integrity Staffing,* the Supreme Court held that the time spent by Amazon warehouse workers waiting to undergo and undergoing security screenings at the end of their shifts was not compensable under the FLSA. *Integrity Staffing*, 574 U.S. at 35.

The Court held that the security screenings were neither a principal activity of Amazon warehouse employees nor integral and indispensable to those employees' principal activities, which involved retrieving products from warehouse shelves to fulfill online shopping orders placed by Amazon customers. *Id*. at 35–36 (noting that a 1951 Opinion Letter from the Department of Labor "drew no distinction between [] searches conducted for the safety of [] employees and those conducted for the purpose of preventing theft—neither were compensable under the Portal-to-Portal Act," *id*. at 36). The Court therefore reversed the Ninth Circuit and upheld the trial court's order dismissing the warehouse workers' FLSA complaint for failure to state a claim upon which relief could be granted. *Id*. at 30–31.

In *Whalen*, the plaintiffs were air traffic control specialists seeking compensation in part for the time they spent undergoing mandatory security screenings before entering Edwards Air Force Base. *Whalen*, 93 Fed. Cl. at 600. The Court of Federal Claims held that the principal activity of the air traffic controllers was directing and monitoring live air traffic from a control room. *Id*. at 583. As such, the security screenings in *Whalen* were not compensable because they did not have "some relation to plaintiffs' principal activities." *Id*. at 600. In coming to this conclusion, however, the court specifically acknowledged the possibility that "security procedures may be integral to the duties of other types of employees [such as] those responsible for the security procedures themselves." *Id*. Notably, *Whalen* did not dispose of this issue on the Government's Motion to Dismiss, and instead found it appropriate to make a finding on the issue only after receiving the parties' respective motions for summary judgment. *Id*. at 582; *see Whalen*, 80 Fed. Cl. at 688.

The Government also directs the Court's attention to a recent case from the Northern District of Ohio, *Henderson v. Cuyahoga County*, 1:20-cv-1351, 2020 WL 5706415 (N.D. Ohio

9

Sept. 24, 2020), in support of its position. In *Henderson*, the district court dismissed the plaintiff-detention officers' FLSA complaint, which alleged that they were entitled to compensation for time spent undergoing security screenings. *Id.* at *3. Distinguishing its opinion from the Tenth Circuit's holding in *Aguilar v. Management & Training Corp.*, 948 F.3d 1270, 1278 (10th Cir. 2020), the court analyzed whether the pre-shift screening at issue was "an intrinsic element of the Plaintiff's principal activities and one with which the employee cannot dispense if he is to perform his principal activities." *Id.* (citing *Integrity Staffing*, 574 U.S. at 33). Taking the plaintiffs' allegations as true, the court held that their principal activities were to be "responsible for the custody and discipline" of the detainees and to "search for contraband and provide security, count, feed, and supervise detainees." *Id*. Though security screenings may have been "related" to these principal activities, the court held that they were not "intrinsic" as Plaintiffs could still perform their jobs effectively without the screenings. *Id.* It is unclear how the court reached this conclusion without making any factual findings based on evidence outside of the allegations in the plaintiffs' complaint. This Court will not prematurely make the same determination with respect to Plaintiffs' allegations.

Similarly, the Government also suggests that *USP Terre Haute & AFGE Local 720*, 58 F.L.R.A. 327 (Jan. 28, 2003), stands for the proposition that undergoing security screenings in a prison is not compensable work. ECF No. 8 at 20. However, the issue of whether screenings were compensable was not challenged or directly addressed by the Federal Labor Relations Authority ("FLRA") in that case. Instead, the FLRA determined that there was "no evidence that the employees in the [] case engage in any principal activities while walking between the security perimeter and the administrator's office" after undergoing the screening. *USP Terre Haute*, 58 F.L.R.A. at 330. Moreover, in *USP Terre Haute*, the FLRA was reviewing an arbitrator's decision

on the merits, not deciding whether the plaintiffs' allegations were sufficient as a matter of law at the pleadings stage.[3]

Here, the security screenings in question are not as far removed from Plaintiffs' alleged principal activities as was the case in *Integrity Staffing* and *Whalen*. Plaintiffs state that their "primary job duty is to maintain the safety and security of the Institution." ECF No. 1 ¶ 9. Plaintiffs allege that they "achieve [safety and security] by maintaining constant vigilance to ensure that nothing out of the ordinary is occurring, immediately addressing any issues that they see no matter the location and time of day that it occurs." *Id*. Plaintiffs further allege they are "charged with performing this job duty every moment that they are within [FCI Mendota]," beginning when they undergo the initial security screenings. *Id*. At these security screenings, according to Plaintiffs, they are performing their primary duty in assisting that no contraband enters FCI Mendota. *Id.* ¶ 20. Other courts have found that similar allegations are sufficient to survive a motion to dismiss. *See Alexander*, 2021 WL 5045270, at *10; *Adegbite v. United States*, No. 20-1183 C, 2021 WL 5045268, at *9 (Fed. Cl. Oct. 29, 2021); *see also Aguilar*, 948 F.3d at 1277 (holding on the merits that undergoing security screenings were integral and indispensable to the principal activities of detention officers in a county prison). Taken as true, Plaintiffs' Complaint sufficiently alleges that the security screenings are integral to Plaintiffs' primary duty and thus state a plausible claim for relief under the FLSA. Whether Plaintiffs can carry their burden of proving such claim is a question that should be made on the merits.

---

[3] Interestingly, the parties in *USP Terre Haute* agreed that picking up equipment from the control center and walking from there to the plaintiffs' respective duty stations was compensable work—a position contrary to the Government's argument in this case, as further discussed below. *USP Terre Haute*, 58 F.L.R.A. at 329 n.7.

In addition to clearing security screenings, Plaintiffs allege that they perform other activities that are compensable work, including donning duty belts and equipment, traveling to and from their duty posts while remaining alert, and exchanging information with the outgoing and oncoming corrections officers at the change of shifts.[4] ECF No 1. ¶¶ 22–27. Similar to Plaintiffs' contention that security screenings are part of their primary job duty of maintaining safety and security at FCI Mendota, Plaintiffs also allege that these other activities are integral and indispensable to the performance of their duties. *Id.* Other courts have held that similar allegations are sufficient to state a plausible claim for relief under the FLSA. *See Alexander*, 2021 WL 5045270, at *11, *14–15; *Adegbite*, 2021 WL 5045268, at *10–12; *see also Steiner*, 350 U.S. at 249 (holding on the merits that showering and changing clothes was integral and indispensable to the work of battery-plant employees who were exposed to dangerous materials in the course of their duties); *Aguilar*, 948 F.3d at 1283 (holding on the merits that receiving pre-shift briefings, picking up and returning keys and equipment, and walking to and from their duty posts were compensable work of prison officers).

The Government takes issue with Plaintiffs' allegation that donning duty belts is compensable work. ECF No. 8 at 21. It points to *FCI Bastrop & AFGE Local 3828*, 69 F.L.R.A. 176 (Jan. 27, 2016), which determined that the time spent by employees *choosing* to don duty belts was not compensable. However, there the duty belts were found to be non-required equipment. *Id.* at 181 ("the Agency does not require the grievants to use duty belts at all, let alone that they

---

[4] Each of these activities may amount to "compensable work" independent of the Court's determination with respect to the security screenings; however, finding as much would be unnecessary if the screenings are Plaintiffs' first principal activity of the workday. The Supreme Court has held that "during a continuous workday, any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is excluded from the scope of [the Portal-to-Portal Act], and as a result is covered by the FLSA." *IBP*, 546 U.S. at 37.

don them immediately after they undergo screening."). Here, Plaintiffs assert that the belts are part of their "required equipment." ECF No. 1 ¶ 20. Whether time spent donning the belts is compensable in this case will be a question to be resolved on the facts—just as it was a factual finding that was on review before the FLRA in *FCI Bastrop*.

Further, the Government cites to a "legion" of cases that it argues show that time spent by Plaintiffs walking to their respective posts is not compensable work as a matter of law. ECF No. 8 at 24–27. However, the majority of these cases involve decisions reached—unlike here—after factual findings were made on the merits. *See, e.g.*, *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340 (11th Cir. 2007); *Corman v. JWS of N.M., Inc.*, 356 F. Supp. 3d 1148 (D.N.M. 2018); *Akpeneye v. United States*, 138 Fed. Cl. 512 (2018); *Mertz v. Wisc. Dep't of Workforce Dev.*, 2015 WL 6181046 (Wis. App. Oct. 22, 2015) (unpublished); *USP Atwater & AFGE Local 1242*, 68 F.L.R.A. 857 (Aug. 27, 2015). Other cases that the Government cites are factually distinguishable. For example, *Baylor v. United States* addressed whether the plaintiffs' lunch breaks were compensable, which is significantly different from the alleged compensable activities pled in this case. 198 Ct. Cl. 331, 364 (1972).

In fact, the two cases upon which the Government seems to rely most heavily, *Akpeneye* and *Babcock v. Butler County*, 806 F.3d 153 (3d Cir. 2015), were both previously distinguished by this court in *Adegbite*. As *Adegbite* noted, *Akpeneye*, which was a suit brought by security guards assigned to the Pentagon, "does not compel dismissal." *Adegbite*, 2021 WL 5045268, at *10. "While remaining vigilant while guarding the Pentagon is clearly of vital importance, it is not the same thing as remaining vigilant while walking through a prison where the people Plaintiffs are guarding may attack them." *Id*. *Adegbite* further distinguished *Babcock*, a case in which a corrections officer sought compensation for duties performed during his uncompensated lunch

13

break. *Id.* at *11. As the court emphasized, the claims in *Babcock* were dismissed under a "predominant benefit test," not at issue here, that applies on a case-by-case basis according to the totality of the circumstances. *Id.* Just as in *Adegbite*, the Court finds that these cases do not compel dismissal of Plaintiffs' claim as there is yet to be a "sufficient development of the facts" to determine whether Plaintiffs' alleged activities are in fact compensable. *Id.* (quoting *Babcock*, 806 F.3d at 158).

The Government also notes that there are cases in which courts have held that requiring a security-related employee to be alert does not immediately make that employee's time compensable. ECF No. 8 at 27. However, under the FLSA, whether an activity is compensable comes down to the particular job at issue and the particular facts of each case. *See Mitchell v. King Packing Co.*, 350 U.S. 260, 263 (1956) (performing fact-specific analysis and concluding that "knife-sharpening activities of [knifemen at a meat packing plant] [were] an integral part of and indispensable to the various butchering activities for which they were principally employed"); *see also Aguilar*, 948 F.3d at 1277 ("whether an activity is compensable depends on 'the productive work that *the employee is employed to perform*'" (emphasis added) (quoting *Busk*, 574 U.S. at 36)). Whether such pre- and post-shift activities are *in fact* integral and indispensable to Plaintiffs' principal activities as correctional officers, such that they are compensable under the FSLA, is matter for discovery. *See Adegbite*, 2021 WL 5045268, at *10; *see also Alexander*, 2021 WL 5045270, at *10 ("the court concludes that defining which activities are 'integral and indispensable' or 'intrinsic' to a 'principal activity' for FLSA purposes is a fact specific inquiry."). All that is required at this early stage of litigation is sufficient factual allegations that, taken as true, plausibly state a claim. Plaintiffs have cleared that hurdle and, therefore, dismissal is inappropriate.

## B.     Plaintiffs Plausibly Allege That Their Activities Are Not De Minimis.

The Government further argues that Plaintiffs have not alleged facts that can support a finding that their uncompensated activities, as pled, surpass the de minimis threshold. ECF No. 8 at 10–13. In their Complaint, Plaintiffs state that they regularly work in excess of 15 minutes, at a minimum, each shift doing various uncompensated pre- and post-shift tasks. ECF No. 1 ¶ 14. The Government argues that if some of these tasks are not compensable work and the remaining activities take less than 10 minutes per shift, Plaintiffs could be without recourse under the FLSA. *See* Def.'s Reply in Supp. of Its Mot. to Dismiss at 24, ECF No. 10 (citing *Singh v. City of New York*, 524 F.3d 361, 371 n.8 (2d Cir. 2008)).

The Government has not shown, however, that the pre- and post-shift activities that Plaintiffs seek compensation for are de minimis as a matter of law. The Government's argument focuses on the contention that many of the activities alleged individually take a de minimis amount of time. *See, e.g.*, *id.* at 21 n.4. The Court, however, must examine work under the de minimis doctrine in the aggregate. *Abbey v. United States*, 99 Fed. Cl. 430, 437 (2011) (citing *Bobo*, 136 F.3d at 1468). Additionally, under the continuous workday rule, the de minimis doctrine becomes irrelevant after the workday has begun because all subsequent activities performed after the start of the workday are compensable. *See* 29 C.F.R. § 790.6(a); *Aguilar*, 948 F.3d at 1277–81; *see also Adegbite*, 2021 WL 5045268, at *12 (noting that other courts disagree with *Singh* and hold that de minimis activities can trigger the continuous workday rule).

The Government does not dispute that Plaintiffs have generally alleged that the activities described take 15–30 minutes in the aggregate to perform each shift. *See* ECF No. 10 at 10. The Government argues that Plaintiffs have not alleged sufficient facts from which the Court can determine with particularity the activities that are compensable work and the activities that are de

minimis. *Id.* at 24. As the Court has already indicated, these questions are more appropriately addressed on the merits after the parties conduct discovery, not on a motion to dismiss. *See Adegbite*, 2021 WL 5045268, at *12; *Alexander*, 2021 WL 5045270, at *16–17 (analyzing similar allegations of plaintiff-correctional officers under the factors set forth in *Lindow v. United States*, 738 F.2d 1057 (9th Cir. 1984), and finding them sufficient to survive dismissal); *see also* ECF No. 9 at 37–38 (citing *Freeman v. MedStar Health, Inc.*, 87 F. Supp. 3d 249, 258 (D.D.C. 2015), and *Sullivan v. PJ United, Inc.*, 362 F. Supp. 3d 1139, 1165 (N. D. Ala. 2019)).

At this stage, the Court must look to the well-pled factual allegations in the Complaint, assume the truth of those allegations, and make all reasonable inferences in favor of Plaintiffs. *United Pac. Ins.*, 464 F.3d at 1327–28. Here, even excluding the health screening, the numerous pre- and post-shift activities described in the Complaint plausibly support Plaintiffs' allegation about the duration of the time spent performing such activities, which as pled exceeds the 10-minute de minimis benchmark. *See* ECF No. 1 ¶¶ 20, 22–28. Accordingly, Plaintiffs have pled sufficient facts to support their allegations that their principal activity is to maintain the safety and security of FCI Mendota, that the alleged activities in question are integral and indispensable components of that principal activity, that the time spent performing these activities is not de minimis, and that they have not been compensated for the time spent on these activities. *Id.* ¶¶ 9, 14, 20–31. These allegations are sufficient to meet Plaintiffs' burden at the pleadings stage.[5] *See Alexander*, 2021 WL 5045270, at *17; *Adegbite*, 2021 WL 5045268, at *13.

---

[5] Because the Court holds that Plaintiffs' FLSA claim survives dismissal, the Government's request to dismiss Plaintiffs' claims under the Back Pay Act ("BPA") also fail. *See* ECF No. 8 at 31–32. As the Government correctly explains, the BPA is derivative and applies only when a separate "provision of law commands payment of money to the employee for the 'unjustified or unwarranted personnel action.'" *Id.* at 31 (quoting *Spagnola v. Stockman*, 732 F.2d 908, 912 (Fed. Cir. 1984)). Here, Plaintiffs have sufficiently stated a claim for relief under the FLSA.

## IV.  CONCLUSION

For these reasons, the Court **GRANTS IN PART** the Government's Motion to Dismiss (ECF No. 8) with respect to claims or requests for relief under the DJA and 28 U.S.C. § 1331 and **DENIES** the Motion in all other respects.  The Court **GRANTS** Plaintiffs' Motion for Leave to File Notice of Supplemental Authority (ECF No. 11).

**SO ORDERED.**


Dated: December 30, 2021                         */s/ Kathryn C. Davis*
                                                 KATHRYN C. DAVIS
                                                 Judge