## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |  |
|---|---|---|
| CINDY ALVAREZ, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | No. 20-1533 |
| v. | ) ) | Filed: April 7, 2023 |
| THE UNITED STATES, | ) ) | Re-issued: April 20, 2023[*] |
| Defendant. | ) ) ) | |

## OPINION AND ORDER

Plaintiffs bring this suit against the United States Department of Justice, Bureau of Prisons, alleging violations of the Fair Labor Standards Act ("FLSA") for uncompensated pre- and post-shift work they performed at Federal Correctional Institution ("FCI") Mendota in Mendota, California. Before the Court is Plaintiffs' Motion for Sanctions Under Rule 37(e) based on the Government's failure to preserve and timely produce video footage requested by Plaintiffs in discovery. Plaintiffs ask the Court to preclude the Government from introducing as evidence any video footage, or still photographs taken from video footage, from Institution cameras and to order an adverse inference against the Government. For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion.

### I. BACKGROUND

**A.    Factual Background**

Plaintiffs are 55 current and former correctional workers employed at FCI Mendota. Pls.' Compl. ¶ 4, ECF No. 1. On November 5, 2020, they filed a Complaint seeking "declaratory

---

[*] The Court issued this opinion under seal on April 7, 2023, and directed the parties to file any proposed redactions by April 17, 2023. As the parties do not propose any redactions, the Court reissues the opinion publicly in full.

judgment, backpay, and other relief" to remedy alleged willful and unlawful violations of the FLSA. *Id.* ¶ 1. Specifically, Plaintiffs contend that the Government failed to compensate them for work performed before and after their scheduled 8-hour shifts, beginning when they undergo a staff security screening in the front lobby and ending when they exit the secured confines of FCI Mendota. Pls.' Redacted Mot. for Sanctions at 6, ECF No. 19.

On March 8, 2022, the Court entered a scheduling order with fact discovery closing on January 13, 2023. *See* Scheduling Order, ECF No. 15. The Court later extended that deadline to February 10, 2023. *See* Order, ECF No. 30. Plaintiffs served the Government with their First Request for Production of Documents ("RFP") on May 11, 2022. Ex. A to Pls.' Redacted Mot. for Sanctions, ECF No. 19-1. In the request, Plaintiffs asked the Government to produce:

> Since November 5, 2017, copies of all videotape and/or photographs showing Plaintiffs entering and exiting the Institution. Specifically, this request covers all videotape and/or photographs of Plaintiffs entering the location where the security screening site is, as well as all videotape and/or photographs of Plaintiffs entering and exiting the secured confines of the Institution (i.e., the front lobby sally port and Control Center).

*Id.* at 11, RFP No. 28. It further stated that Plaintiffs "are amenable to entering into a Stipulation to streamline the collection, production, and use of video/photographic evidence in this litigation." *Id.*, RFP No. 28 n.1. The Government initially told Plaintiffs that the agency was receptive to a stipulation; and consequently, the parties held a call in late June 2022 to discuss the collection and production of video evidence. Ex. B to Pls.' Redacted Mot. for Sanctions at 9–12, ECF No. 19-2. Despite Plaintiffs' following up, months went by without any substantive response from the Government about video retention or the proposed stipulation. *Id.* at 6–7.

On September 12, 2022, Plaintiffs emailed the Government to inquire about the status of its overdue document production and to follow up on the video stipulation. *Id.* Emphasizing the time constraint posed by the upcoming discovery deadline, the Government's delayed production,

2

and counsel's own schedule, Plaintiffs informed the Government that the production of video evidence would no longer be useful as Plaintiffs would be unable to analyze it in a timely manner. *Id.* They proposed to stipulate that no video evidence would be produced or utilized. *Id*. at 7. Plaintiffs further informed the Government that unless it provided a substantive update by September 23, 2022, or agreed to a no-video stipulation, Plaintiffs would move to preclude the Government from introducing video evidence. *Id*.

The Government responded on September 16, 2022, advising that it had encountered unexpected staffing challenges and would have a response "by the end of next week." *Id*. at 5–6. As before, the Government did not respond, prompting follow-up emails from Plaintiffs on September 21, September 26, and October 4, 2022, for information about video retention and the proposed no-video stipulation. *Id*. at 3–5. Finally, on October 7, 2022, the Government informed Plaintiffs that it was not receptive to entering a stipulation to preclude the use of video footage and intended to proceed with preservation of four weeks of footage. *Id*. at 2. The Government further stated, in a different email that same day, that FCI Mendota had approximately 14 days of archived video footage from five relevant cameras that it was prepared to start downloading, which it believed should be sufficient for this case. Ex. C to Pls.' Mot. for Sanctions at 2, ECF No. 18-3.

What was not disclosed by the Government at the time—because it came to light during the briefing of the instant motion—was the fact that FCI Mendota had previously preserved approximately three months of video footage from a period immediately preceding the Complaint that it now cannot locate. *See* Gov't.'s Redacted Resp. to Pls.' Mot. for Sanctions at 11–12, ECF No. 23. Nor did the Government disclose that in December 2020 agency counsel directed the warden at FCI Mendota not to preserve any additional video going forward, despite his intention to do so. *Id.* at 20–21 (Decl. of Adam Eisenstein ¶¶ 4–5).

**B.    Procedural Background**

On October 24, 2022, Plaintiffs filed the instant motion, arguing that the Government failed to comply with its obligation to preserve, maintain, and produce relevant video evidence. ECF No. 19 at 13. Plaintiffs contend that, at an absolute minimum, the Government should have started preserving and retaining video footage as of May 11, 2022, when Plaintiffs made their discovery request. *Id.* at 16. According to Plaintiffs, the Government's belated production of video footage is worthless to Plaintiffs because (a) there is not sufficient time to review even a few weeks of video and utilize it during the current fact discovery period (which has since closed), and (b) producing several weeks of footage from only one quarter will not capture a meaningful percentage of Plaintiffs during their work times due to rotating assignments at various posts. *Id*. at 15, 17–19. Because any video not preserved has been permanently overwritten and because future preservation of a sufficient sample of footage would substantially delay the litigation, Plaintiffs contend that the Government's failure to preserve and produce video evidence is incurable and highly prejudicial. *Id*. at 15–16, 18. They ask the Court to impose two sanctions: (1) an order precluding the Government from using or introducing any video footage or still photographs taken from video footage at any point in this litigation, and (2) an adverse inference against the Government that any video footage between May 2022 and the present would have shown that Plaintiffs were inside the secured confines of FCI Mendota for 15–30 minutes beyond their paid 8-hour shifts on a regular basis. *Id*. at 11, 24.

In its opposition, the Government confirms that on November 15, 2022, it delivered a hard drive containing five weeks of video footage, from October 1 through November 4, 2022, to Plaintiffs. ECF No. 23 at 6. According to the Government, the delay in responding to Plaintiffs' request for video was substantially justified due to staffing challenges faced by FCI Mendota and

agency counsel. *Id*. at 6–7, 15. The Government denies that it failed to comply with its preservation obligations. *Id.* at 9–10. In the Government's view, it has adequately responded to Plaintiffs' request through the five weeks of footage produced, and Plaintiffs cannot demonstrate any prejudice from receiving video downloaded in October 2022 versus May 2022 or even 2020. *Id.* at 9–10, 13–14. Finally, the Government argues that Plaintiffs cannot demonstrate an intent to deprive them of video evidence as required for an adverse inference because the Government produced and undertook early, good faith efforts to preserve video footage. *Id*. at 16–17.

Plaintiffs' reply emphasizes that the new information disclosed by the Government for the first time in its response "further demonstrates the need to sanction the Government for its multiple and inexcusable discovery failures." Pls.' Redacted Reply at 4, ECF No. 25. As evidence of sanctionable conduct, they point to the Government's unilateral decisions to stop preserving video footage in December 2020 and not to preserve evidence upon receiving Plaintiffs' request in May 2022, its inexplicable loss of the preserved 2020 video footage, and its failure to consult with Plaintiffs or disclose the existence of the video footage collected in 2020 until after the filing of the instant motion. *Id*. at 6–7, 10–11. According to Plaintiffs, these facts demonstrate the Government's intent to deprive Plaintiffs of relevant video evidence. *Id*. at 15–16.

## II.  LEGAL STANDARD

"Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *United Med. Supply Co., Inc. v. United States*, 77 Fed. Cl. 257, 263 (2007) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). Federal courts have inherent authority to sanction spoliation by parties before them to "ensure that [the party] does not benefit from its misdeeds; to deter future misconduct; to remedy, or at least minimize, the evidentiary or financial

damages caused by the spoliation; and . . . to preserve the integrity of the judicial process and its truth-seeking function." *Id*. at 264.  The courts also are empowered to impose sanctions for spoliation pursuant to the applicable rules of procedure. *Id.*  The United States, like any other litigant, is subject to spoliation sanctions. *See M.A. Mortenson Co. v. United States*, 996 F.2d 1177, 1183–84 (Fed. Cir. 1993).  The form and severity of the sanction depend on "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1329 (Fed. Cir. 2011) (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)).

When the evidence at issue is electronically stored information ("ESI"), Rule 37(e) of the Rules of the United States Court of Federal Claims ("RCFC") sets the framework for imposing sanctions.  Pursuant to that rule,

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>     (A) presume that the lost information was unfavorable to the party . . . .

RCFC 37(e).

### III. DISCUSSION

The parties agree that the video evidence at issue is electronically stored information, and thus RCFC 37(e)'s criteria apply.  Based on an analysis of those factors, an order precluding the Government from using video evidence in the litigation is appropriate pursuant to RCFC 37(e)(1),

but Plaintiffs have not demonstrated that an adverse inference is warranted.

> **A.     The Government Failed to Take Reasonable Steps to Preserve Evidence That It Had a Duty to Preserve.**

Parties have a duty to preserve evidence when litigation is "pending or reasonably foreseeable." *Micron Tech.*, 645 F.3d at 1320 (quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)). "This obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation . . . ." *Id.* (quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)). Here, there is no dispute that the videos requested are relevant to Plaintiffs' FLSA claim for unpaid pre- and post-shift work. *See* Oral Arg. Tr. at 30:2–7, ECF No. 33. Video footage showing Plaintiffs clearing security and entering/exiting the secured area at FCI Mendota may help to determine whether and, if so, how much time Plaintiffs have allegedly worked beyond their shift times. As Plaintiffs point out, because FCI Mendota has not implemented the use of time clocks, video footage may be one of the only sources of evidence about Plaintiffs' entry and exit times other than witness testimony. *See* ECF No. 19 at 14.

Its relevance to Plaintiffs' claim was known or should have been known to the Government when the Complaint was filed on November 5, 2020. That conclusion is supported by the fact that the warden at FCI Mendota apparently took it upon himself to start the process of "preserv[ing] security footage for the purposes of this litigation" shortly before and/or after the filing of the Complaint. ECF No. 23 at 20 (Eisenstein Decl. ¶ 4). Similar early preservation efforts appear to have occurred in at least one other FLSA case pending in this court involving a different correctional facility. *See* Ex. D to Pls.' Mot. for Sanctions at 3, ECF No. 18-4 (attaching stipulation in *Adegbite v. United States*, No. 20-1183C (Fed. Cl. Apr. 7, 2022), reflecting preservation of video at FCI Sheridan from 2020–2022). The known relevance of video evidence also is demonstrated by the fact that the Government instructed the warden to retain the 2020 video footage "in the

7

event it was needed for purposes of discovery in this litigation" and specifically discussed the types of employees who would need to be involved in any video preservation efforts going forward. ECF No. 23 at 21 (Eisenstein Decl. ¶¶ 6–7).

The Government does not dispute that it had a duty to preserve relevant video footage, but it disputes the timing of when that duty arose and the extent of footage that the duty requires the Government to preserve. ECF No. 33 at 21:19–22:2, 28:3–8 (arguing that the Government did not have a duty to preserve all video footage indefinitely from the date the action was filed). It argues that it took reasonable steps to preserve the archived footage available in 2020 when the Government became aware of Plaintiffs' Complaint. ECF No. 23 at 11–12. Due to staffing challenges, it was not until early October 2022 that the Government learned that the video footage was lost. *See id.* Perplexingly, the Government contends that "[t]he fact that FCI Mendota . . . has been unable to locate the 2020 video footage[] does not mean that the United States has failed to preserve video footage in this case." *Id.* at 12. The Court disagrees.

The record demonstrates that the Government's duty to preserve video footage arose by no later than November 2020, when the Government both learned of Plaintiffs' lawsuit and knew (or should have known) that video footage would be relevant to claims or defenses in the litigation.[1] *See Micron Tech.*, 645 F.3d at 1320. As the Government correctly notes, the duty to preserve ESI does not require "heroic or unduly burdensome" efforts. *Incardone v. Royal Caribbean Cruises, Ltd.*, No. 16-20924-CIV, 2019 WL 3779194, at *23 (S.D. Fla. Aug. 12, 2019) (quoting *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, Comment 5.e., 19 Sedona Conf. J. 1, 108 (2018)). Nor must a

---

[1] At the very latest, the Government was unquestionably on notice of the relevance of video evidence when Plaintiffs served their RFPs on May 11, 2022, as the Government concedes. *See* ECF No. 33 at 31:6–16.

party's preservation efforts be perfect. Reasonableness and proportionality are the measures. *See Sedona Principles*, 19 Sedona Conf. J. at 108–09. In this case, the Government did not take reasonable steps to preserve relevant video footage.

First, aside from instructing the warden to retain the archived video at the time the Complaint was filed, the Government undertook no preservation efforts. It fails to explain why the initial three months of archived video footage collected in 2020 was sufficient to meet its *prospective* preservation duty and why it affirmatively instructed the warden not to preserve any additional video footage during the litigation, despite his apparent intent to do so. To be sure, the Court would not necessarily impose an indefinite preservation obligation on the Government or an obligation that extends to video footage from the over 200 cameras at FCI Mendota, nor do Plaintiffs argue for one.[2] The burdens associated with preserving years of video from Institution cameras that would capture relevant footage may be disproportional to the needs of the case, considering the time-consuming nature of reviewing video evidence. *See* ECF No. 19 at 17 (describing video review process). But simply arguing that the broadest interpretation of the Government's preservation duty is unreasonable does not show that the Government's actual preservation efforts were reasonable.

If the Government had concerns about the costs or burdens posed by the parameters of ESI preservation, it should have discussed them with Plaintiffs at the latest during the early meeting of counsel. RCFC App'x A, § II.3(d) (requiring counsel to confer about "any issues relating to preserving discoverable information"); *see Sedona Principles*, 19 Sedona Conf. J. at 98–99 (noting the risk of making unilateral electronic discovery decisions and recommending cooperative

---

[2] For these reasons, the Government's reliance on *Incardone*, in which the plaintiffs sought over 14,000 hours of video footage taken from 200 cameras aboard a cruise ship documenting the effects of a violent storm, is inapposite. *See* ECF No. 23 at 13.

discussions between parties); Fed. R. Civ. P. 37, advisory comm. notes, 2015 amend., subdiv. (e) (noting that amendments to Fed. R. Civ. P. 16(b) and 26(f) "encourage discovery plans and orders that address preservation" and that "promptly seeking judicial guidance about the extent of reasonable preservation may be important"). Although a party also may make unilateral decisions about their preservation obligations, they do so "at their own peril." *Hugler v. Sw. Fuel Mgmt.*, No. 16 CV 4547, 2017 WL 8941163, at *7 (C.D. Cal. May 2, 2017).

Second, even assuming the archived 2020 video footage was sufficient to satisfy its preservation duty, the Government cannot locate the videos, nor can it explain what steps, if any, FCI Mendota undertook to preserve it. *See* ECF No. 23 at 12; *see also* ECF No. 33 at 25:6–26:10. The Government can represent at most only that it orally instructed the warden at FCI Mendota to retain the archived video, and it admits that the litigation holds put in place after the Complaint was filed were not directed to video footage. *See* ECF No. 23 at 20–21 (Eisenstein Decl. ¶ 5); ECF No. 33 at 24:6–25:5.

Third, even after the Government received Plaintiffs RFPs on May 11, 2022, specifically requesting videos, it again took no steps to begin preserving relevant video footage going forward, nor did it meaningfully engage with Plaintiffs regarding the issue of preservation or Plaintiffs' offer of a stipulation streamlining production of video evidence. The stipulation would have both reduced the burdens on the Government from collecting and producing video evidence and provided Plaintiffs with a suitable sample of relevant video footage for use in the litigation. The Government has discussed and agreed to similar stipulations in other FLSA cases involving different federal correctional institutions. *See* ECF No. 19 at 14 n.2; ECF No. 18-4 at 3. Instead, despite initially telling Plaintiffs it was receptive to a stipulation, the Government determined that producing only the archived 2020 video footage (which presumably was lost by that point) would

provide an adequate response, *see* ECF No. 23 at 13, even though Plaintiffs' request sought all relevant video footage since November 5, 2017.  It then did not respond to Plaintiffs' requests for information about video retention or begin to download relevant video footage until *after* Plaintiffs advised that they would seek to preclude video evidence, and it did not produce any responsive videos until *after* Plaintiffs filed the instant motion.  Even considering personnel shortages, the Government's approach to responding to Plaintiffs' video request is not reasonable, let alone substantially justified (as it contends).

Accordingly, the Court finds that the Government failed to take reasonable steps to preserve relevant video footage that it had a duty to preserve.

**B.    The Lost Video Footage Cannot Be Restored or Replaced Through Additional Discovery.**

The second factor of RCFC 37(e) analyzes whether the relevant video footage that the Government failed to preserve is "lost" and "cannot be restored or replaced through additional discovery."  RCFC 37(e).  There is no genuine dispute about the first issue of this factor.  As explained by the Government's counsel, the system at FCI Mendota (as at all other federal correctional institutions) is programmed to "not continue storing video after 14 days."  ECF No. 33 at 22:22–25.  So, any relevant video footage created during this litigation that was not downloaded by FCI Mendota is permanently lost.  Moreover, the Government represents that it cannot locate the archived 2020 video footage that it instructed the warden to retain, despite "a thorough search of everywhere at FCI Mendota that the video could have been stored."  *Id.* at 26:11–17.  The Government is thus unable to get back any video from the time Plaintiffs filed the Complaint until October 1, 2022, or after November 4, 2022.  *See id*. at 44:22–25.

The primary dispute is whether the lost video footage can be restored or replaced through additional discovery.  As explained in the advisory committee notes for Federal Rule of Civil

11

Procedure 37(e), on which RCFC 37(e) is based, the requirement that ESI must be "lost" reflects the fact that ESI "often exists in multiple locations," and as such "loss from one source may often be harmless when substitute information can be found elsewhere." Fed. R. Civ. P. 37, advisory comm. notes, 2015 amend., subdiv. (e).  Consistent with that commentary, courts have analyzed whether ESI can be "restored or replaced" by asking, for example, whether the ESI existed on digital backup tapes or in multiple electronic versions, could be retrieved from the defendant's computer hard drive or backup system or obtained from a third-party to whom the defendant sent a copy, or could be produced by another party to the litigation.  *See Freidig v. Target Corp.*, 329 F.R.D. 199, 208 (W.D. Wis. 2018); *Stovall v. Brykan Legends, LLC*, No. 17-2412, 2019 WL 480559, at *3 (D. Kan. Feb. 7, 2019); *Greer v. Mehiel*, No. 15-cv-6119, 2018 WL 1626345, at *8 (S.D.N.Y. Mar. 29, 2018).  Some courts have assessed whether other discoverable information that was not identical to the lost ESI could nonetheless be considered comparable or equivalent evidence.  *See 4DD Holdings, LLC v. United States*, 143 Fed. Cl. 118, 132 (2019) (addressing other types of ESI or documentary evidence which could be pieced together to allegedly show facts contained in the lost ESI); *Schmalz v. Vill. of N. Riverside*, No. 13 C 8012, 2018 WL 1704109, at *4 (N.D. Ill. Mar. 23, 2018) (addressing witness testimony about contents of deleted text messages); *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 497 (S.D.N.Y. 2016) (addressing near-duplicate emails).

Here, the Government argues that production of the October 2022 video footage sufficiently replaces any lost video.  *See* ECF No. 23 at 15.  According to the Government, the five weeks of video footage are representative of what correctional workers like Plaintiffs do as they go through FCI Mendota's lobby and control center to get to the sally port, and it is not aware of any changes with respect to how employees enter and exit the premises since the filing of the

Complaint. ECF No. 23 at 14; ECF No. 33 at 29:12–22. If it is an inadequate sample, the Government argues that pursuant to a pre-negotiated schedule (*i.e.*, stipulation) it can make future productions of video footage created prospectively. ECF No. 23 at 10; ECF No. 33 at 47:2–9.

Neither form of additional discovery, however, meets the "restored or replaced" criteria. To begin, the October 2022 video footage or any future video footage produced will not depict the same events as the videos that the Government failed to preserve. There are no digital backups, no multiple versions, or copies of which the parties are aware. Nor does the October 2022 video provide comparable or equivalent evidence. Plaintiffs' video request sought videotape and/or photographs of Plaintiffs entering the security screening site and entering/exiting the secured confines of the Institution over the course of the claim period to present. ECF No. 19-1 at 11, RFP No. 28. According to assignment sheets produced in discovery, 75 percent of Plaintiffs were assigned to non-custody positions or posts not at issue in this case during the period covered by the October 2022 video footage. Pls.' Reply at 13, ECF No. 24. The footage produced would thus likely contain few relevant examples showing Plaintiffs' alleged pre- and post-work times. *Id.* Accordingly, the October 2022 video footage does not provide as complete of a picture as would have been provided had the Government complied with its preservation obligations because footage produced from a longer period or at different periods would provide a better opportunity to capture Plaintiffs while working in positions relevant to this case. *See 4DD Holdings*, 143 Fed. Cl. at 132 (finding other evidence did not replace lost ESI where the evidence was incomplete and did not "offer a comprehensive, reliable picture").

The other additional discovery proposed involves the Government making future productions of video footage covering periods that would provide a representative sample. That option comes at the cost of substantially delaying the litigation to allow for both the creation and

review of new footage. As Plaintiffs noted, in other cases in which the parties agreed to video stipulations, the periods covered by the production range from about six months to one year. *See* ECF No. 18-4 (attaching stipulation in *Adegbite* for production of video from five periods between August 23, 2020, through September 25, 2021); ECF No. 33 at 16:11–17 (explaining that in arbitrations involving similar claims video production may involve six weeks of footage selected from a seven-month period). Plaintiffs describe the review process that would follow as "immensely time-consuming." ECF No. 19 at 13. Moreover, the Court would need to re-open discovery to the extent Plaintiffs wanted to use the video footage in conducting depositions of agency witnesses, a concern that motivated the instant motion. *See* ECF No. 19 at 15. And of course, future production of new video cannot replace lost videos for any Plaintiff who has since left FCI Mendota or permanently moved to a different position not at issue in the case.

The Government has cited no case or other authority that supports the proposition that lost ESI can be "restored and replaced" with additional discovery of ESI that does not currently exist but that will be created prospectively.[3] Indeed, in FLSA actions brought by the Secretary of Labor against private employers, courts have granted sanctions motions where the defendant-employers failed to preserve video surveillance evidence that would have identified employees and the hours they worked. *See Hugler*, 2017 WL 8941163, at *9 (finding that lost surveillance video showing employees arriving at and leaving work, among other things, could not be restored or replaced); *see also Perez v. Sunshine Motel Inn, LLC*, No. 1:15-CV-3197-RMP, 2016 WL 10585999, at *4 (E.D. Wash. Dec. 21, 2016).

---

[3] The representative video in *Incardone*, the case on which the Government primarily relies, was not newly created footage. In *Incardone*, the court held that the 91 minutes of video preserved by defendants "was an accurate and sufficient representation of the storm conditions and the effect on the ship" to show what happened during the discrete incident at issue in the litigation. *Incardone*, 2019 WL 3779194, at *15.

### C. Plaintiffs Are Prejudiced by The Loss of Video Footage.

For largely the same reasons, the Court finds that Plaintiffs have been prejudiced by the Government's loss of relevant video footage. *See* RCFC 37(e)(2). "An evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation." Fed. R. Civ. P. 37, advisory comm. notes, 2015 amend., subdiv. (e); *see Sedona Principles*, 19 Sedona Conf. J. at 195. "Prejudice may appear in many forms, such as plaintiffs being 'unable to fully respond to . . . secondary evidence' [introduced as indirect proof of the evidence lost] or being required to go to great lengths in discovery to fill in the gaps in the evidence." *4DD Holdings*, 143 Fed. Cl. at 132 (quoting *Lab. Corp. v. United States*, 108 Fed. Cl. 549, 562 (2012)).

Here, the lost video is both unique and important. Other than video footage, the parties have not identified any other source of evidence that would objectively show Plaintiffs clearing security or entering/exiting FCI Mendota relative to their work shifts. Proof relating to the duration of those activities is material to establishing an essential element of Plaintiffs' FLSA claim. In the absence of videos, Plaintiffs are not left completely without proof and may seek to establish the same facts via witness testimony. But the availability of testimonial evidence does not necessarily alleviate the prejudice from the loss of the tangible ESI itself, as several courts have held. *See, e.g.*, *Schmalz*, 2018 WL 1704109, at *4; *Perez*, 2016 WL 10585999, at *4; *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, No. 13CV2581PKCJLC, 2021 WL 4190628, at *17 (S.D.N.Y. Aug. 18, 2021). Thus, although not fatal to Plaintiffs' case, the loss of potentially corroborative evidence is prejudicial in these circumstances.[4]

---

[4] Although not raised in its brief, at oral argument the Government suggested that the lost video footage may not be "fully supportive of Plaintiffs' claims." ECF No. 33 at 29:25–30:1. Rule 37(e)(1) "does not place a burden of proving or disproving prejudice on one party or the other,"

Further, as discussed above, the Government's production of the October 2022 video footage only partially responds to Plaintiffs' request and is not sufficient to replace the lost videos that the Government failed to preserve, given that the five weeks of footage was taken in a single quarter that at best would capture only 25 percent of Plaintiffs in this matter. Even if it depicts employees in general passing through security screening and in/out of the secured area, Plaintiffs' ability to test the probative value of the footage is hampered by the fact that no other video to which it could be compared has been properly preserved since the filing of the Complaint. On the flip side, attempting to substitute the lost video footage with an adequate sample created prospectively will substantially delay litigation, which is unduly prejudicial to Plaintiffs. Although the Government correctly notes that the Court has not yet issued a scheduling order for dispositive motions or trial, the efforts to create and review additional videos would take many months to a year. That delay would be unfairly borne by Plaintiffs when it was directly caused by the Government's unreasonable conduct and when Plaintiffs—who ultimately bear the burden of proof—want to proceed to trial without video evidence.

### D.   Remedial Measures Are Appropriate Under RCFC 37(e)(1).

Because the Court has made a finding of prejudice, remedial measures under RCFC 37(e)(1) are appropriate. The range of measures available are broad and subject to the Court's discretion; however, they may be "no greater than necessary to cure the prejudice." RCFC

---

and it acknowledges that "placing the burden of proving prejudice on the party that did not lose the information may be unfair" in situations where it is difficult to determine the content of the lost information. Fed. R. Civ. P. 37, advisory comm. notes, 2015 amend., subdiv. (e)(1). In this case, we know generally what the footage would have depicted (*i.e.*, Plaintiffs and other employees arriving at and leaving work), but it cannot be known now whether it is "fully supportive" of one party or the other. Faulting Plaintiffs for not proving the exact facts shown by the lost video, however, would seem an unfairly high bar where the absence of the information is the result of the Government's failures.

37(e)(1). Plaintiffs argue that precluding the Government from using video evidence in this litigation is the proper remedy. The Court agrees.

The advisory notes to Rule 37(e) recognize that in appropriate cases a court may forbid parties that failed to preserve ESI from putting on certain evidence or exclude specific items of evidence to mitigate prejudice caused by a party's failure to preserve other evidence that might contradict the excluded items. *See* Fed. R. Civ. P. 37, advisory comm. notes, 2015 amend., subdiv. (e)(1). A similar remedial measure was imposed in a FLSA case where the defendant-employer failed to preserve relevant video evidence. *See Hugler*, 2017 WL 8941163, at *11 (ordering under Rule 37(e)(1) that defendants were precluded "from using any . . . videos to support any motion (including a discovery motion), at any hearing, and at the bench trial"). And the Government agreed to the same measure in yet another FLSA case pending in this court involving a different correctional facility. *See* ECF No. 25 at 9 n.1 (citing Joint Status Report, *Alexander v. United States*, No. 21-1143 (Fed. Cl. Apr. 1, 2022) (stipulating that "no footage or photographs from internal prison security cameras will be produced, introduced, or used for any purpose in the litigation" due to "the Agency's inability to capture the previously agreed-upon video footage by the agreed-upon deadline")). The Government is therefore precluded from introducing as evidence, at any point in this case, video footage or still photographs taken from video footage from Institution cameras.

E.   **The Government's Actions Do Not Rise to The Level of An Intent to Deprive Plaintiffs of The Use of Video Footage.**

Although curative measures are warranted, the Government's conduct does not rise to the level that justifies an adverse inference. As explained in *4DD Holdings*, courts have interpreted Rule 37(e) "to require a showing of anything from bad faith to irresponsible behavior that lacks any other explanation than intent to deprive." *4DD Holdings*, 143 Fed. Cl. at 133 (collecting

17

cases). Since the rule's amendment in 2015, mere negligence or even gross negligence is no longer sufficient. *Id.*; *see* Fed. R. Civ. P. 37, advisory comm. notes, 2015 amend., subdiv. (e)(2).

According to Plaintiffs, the Government's months-long delay in production and unacceptable lack of communication demonstrate "blatantly irresponsible," not just negligent, behavior. ECF No. 19 at 23; *see* ECF No. 25 at 15. They point to the Government's deliberate and intentional decisions to stop preserving video evidence in 2020 and not to preserve video evidence beginning in May 2022 when it received Plaintiffs' request. *See* ECF No. 25 at 16. That the Government produced some video footage is irrelevant to whether it acted with an intent to deprive, Plaintiffs contend, because the footage produced by the Government is not sufficient to respond to Plaintiffs' RFP. *Id*. at 17. They argue that, in sum, the actions show "unambiguously an 'intentional effort' to keep Plaintiffs from accessing relevant video evidence." *Id.* at 16.

Although grossly negligent, the Government's actions do not demonstrate an "intent to deprive" Plaintiffs of the use of video evidence in the litigation. RCFC 37(e)(2). The Government made some efforts at preservation, most notably by downloading and archiving video footage before and shortly after the Complaint was filed and by directing the warden at FCI Mendota to preserve that footage for purposes of the litigation. The Government completely fails to explain how the footage was lost, but there is no evidence that it was intentionally destroyed. The most reasonable inference from the facts is that the downloaded footage was inadvertently lost due to personnel turnover at FCI Mendota. To be sure, the Government's decisions in 2020 and 2022 not to preserve additional footage were deliberate and intentional; however, there is no evidence that the underlying rationale was to deprive Plaintiffs of the use of video evidence. Rather, the Government explains that it considered retaining the 2020 footage sufficient to meet its preservation obligations and to respond to Plaintiffs' video request. That position may have been

legally incorrect, but it does not necessarily evince bad faith.  Furthermore, the Government produced some video footage in response to Plaintiffs' discovery request, albeit in a very belated and incomplete manner.  Overall, the Government certainly could have approached the issue of video preservation more proactively and collaboratively, provided more specific guidance to FCI Mendota for properly retaining available video footage, and been more cooperative and responsive in the discovery process.  At most, however, this rises to gross negligence, not intent to deprive.  Therefore, the Court will not draw an adverse inference against the Government.

### IV.  CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion for Sanctions (ECF No. 18).  The Government is precluded from using or introducing any video footage or still photographs taken from video footage from FCI Mendota cameras at any point in this litigation.

This opinion and order will be unsealed in its entirety after April 19, 2023, unless the parties submit **by no later than April 17, 2023**, an objection specifically identifying the protected information subject to redaction.  Any objecting party must submit a proposed redacted version of the decision and provide the reason(s) supporting the party's request for redaction.

**SO ORDERED.**


Dated: April 7, 2023                            */s/ Kathryn C. Davis*
                                                KATHRYN C. DAVIS
                                                Judge